THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS KEECH v. HUBERT O. THOMPSON, Commissioner of Public Works, Respondent.

*Removal of a clerk in New York city, by the head of his department — he is not entitled to a formal trial — the decision of the head of the department is not reviewable on appeal — 1873, chap. 335, sec. 28.*

Under section 28 of the New York charter (chap. 335 of 1873), providing that "no regular clerk or head of a bureau shall be removed until he has been informed of the cause of the proposed removal and has been allowed an opportunity for explanation," the head of a department must assign as a cause of removal some dereliction of duty or incapacity to perform the duties of the office, or some delinquency affecting the general character of the officer and his fitness for the office and give him an opportunity for explanation; but the officer is not entitled to demand a formal trial or to require that evidence, either oral or written, should be produced and received either to sustain or disprove the charges made.

The statute makes the head of the department the exclusive judge of the sufficiency of the explanation presented, and his decision thereon cannot be reviewed by the courts.

Certiorari to the respondent, who is commissioner of public works, to review his action in removing the relator from the office of superintendent of the bureau of repairs and supplies in the department of public works in the city of New York.

*De B. Wilmot*, for the relator.

*D. J. Dean*, for the respondent.

Davis, P. J.:

On the 29th day of March, 1875, the relator was appointed superintendent of repairs and supplies by the then commissioner of public works. He entered upon the duties of his office on the first day of April following, and continued in the office until his removal by the commissioner of public works, on the 15th of April, 1881.

Subdivision 7 of section 72 (chap. 335 of the Laws of 1873, p. 503) creates " a bureau of repairs and supplies, which shall have cognizance of all supplies and repairs to public buildings, works, lands and places, and all other necessary repairs and supplies not provided for in other departments, the chief officer of which shall be called superintendent of repairs and supplies." By section 28 of the same act it is provided that " the heads of all departments (except as otherwise herein specifically provided) shall have power to appoint and remove all chiefs of bureaux (except the chamberlain), as also all clerks, officers, employes and subordinates in their respective departments, except as herein otherwise specially provided, without reference to the tenure of office of any existing appointee."

Upon this general power of removal a limitation is imposed by the act in respect of two classes of officers, which is expressed in these words : " But no regular clerk or head of a bureau shall be removed until he has been informed of the cause of the proposed removal, and has been allowed an opportunity of making an explanation, and in every case of a removal the true grounds thereof shall be forthwith entered upon the records of the department or board."

The general power of the commissioner to remove the relator is subject to two conditions : First, that he shall be informed of the cause for which his removal is proposed ; and second, shall be allowed an opportunity for explanation.

The use of the word " cause " in the first of these conditions indicates a restriction of the right of removal to some reasonable and substantial ground, other than the mere pleasure of the head of the department, or a change of his political character.

As was held by the Court of Appeals in the *People ex rel.*

*Munday* v. *Fire Commissioners* (72 N. Y., 445), the cause assigned should be some dereliction or neglect of duty or incapacity to perform the duties, or some delinquency affecting the general character of the officer, and his fitness for the office.

Three questions therefore arise in this case for our consideration, upon the return of the commissioner:

*First.* Was the relator informed of the cause of his proposed removal?

*Second.* Was the cause or causes of which he was so informed of such a nature as to authorize his removal if unexplained?

*Third.* Was the relator allowed an opportunity for explanation within the meaning and requirements of the statute?

It appears by the return that on the 11th of April, 1881, the commissioner of public works addressed to the relator the following letter:

DEPARTMENT OF PUBLIC WORKS, COMMISSIONER'S OFFICE,
No. 31 CHAMBERS ST., NEW YORK, *April* 11, 1881.

*To* Mr. THOMAS KEECH:

SIR — Since our recent conversation, when I had occasion to complain of the manner in which the duties of your bureau are discharged, I have concluded to ask a full and formal explanation of the matters talked about by us.

You are therefore notified that you will be allowed an opportunity, at this office, at twelve o'clock noon of the fourteenth instant (Thursday), of making an explanation of such matters, and unless satisfactory, I shall remove you from the office of superintendent of repairs and supplies.

After a very careful examination into the affairs of your bureau, I have become fully convinced that you have not performed the duties of your office with the requisite promptitude, intelligence and efficiency.

The following are some of the facts and circumstances which have led me to this conviction and conclusion:

In the final estimate for the year 1881, special appropriations were made, as requested in the department estimate, for "fitting up Fifth regiment armory, Essex market, $18,000," and for "fitting up Sixty-ninth regiment armory, Tompkins market,

$15,000." It was your duty to report to me plans or measures toward the execution of these necessary works, which came under the charge and supervision of your bureau, especially since officers of the regiments repeatedly urged upon you the necessity of fitting up the armories as speedily as possible, and you were informed of the fact that the Fifth regiment will have to vacate its present quarters and move into the armory over Essex market on the first of May next. Yet, for a period of more than three months since the appropriations were made you have failed to report or even suggest to me anything whatever in connection with these works, or to make any preparation or report as to their execution, and officers of the Fifth regiment have finally complained to me of your inattention and inaction in this matter.

In the matter of placing an elevator in the brown-stone court-house, for which provision was made in the departmental and final estimates for 1881, you have shown the same want of attention.

It is one of your duties to furnish to the head of the department estimates of the cost of any work to be done, or supplies to be furnished through your bureau, to enable him to make a proper apportionment of the moneys appropriated among the various works and supplies required according to their necessity. But your estimates have been so flagrantly incorrect that they cannot be taken as an indication even of the ultimate cost of the respective works or supplies.

A large proportion of the bills or vouchers for work done and supplies furnished has been unnecessarily and unreasonably delayed in your bureau. I have submitted to a great deal of annoyance by reason of complaints from tradesmen and persons dealing with the city of the delays attending the approval of bills passing through your bureau, and I finally came to the conclusion, after mature deliberation, to adopt a rule which, in my judgment, gives adequate time for the necessary examination and work. It is, of course, annoying to the head of a department to be dunned about bills against the department, and I have determined to relieve myself from this annoyance in the future; to that end I issued the circular letter requiring the transmission of all bills for work, supplies or services from the respective bureaux within seven days after the receipt of the same. In your letter to me of the thirty-first ultimo, in refer-

ence to that circular, you say that it is not possible to make proper examination as to bills in your bureau within that time. You thereby state your inability or unwillingness to do that which in my opinion an intelligent, diligent and well disposed officer in your position could readily do, and to discharge the duties of your office with that promptitude which the public interest requires.

You have allowed some of the work under your supervision to be performed in a very dilatory manner to the great inconvenience of public officers, and after repeated requests by me personally and through my deputy that these works be more promptly executed.

In your letter to me of the fourth instant you say that the business of your bureau is suffering very much for want of efficient clerical help, and that for the last two months the only clerical work done was to voucher bills. You thereby acknowledge that you allowed such state of things to exist for two months without reporting it to me to enable me to correct it if necessary.

Very respectfully.

(Signed) HUBERT O. THOMPSON,
*Commissioner of Public Works.*

This letter certainly very clearly accomplishes two things : It assigns a cause for the proposed removal, specifying with a sufficient degree of particularity the facts out of which such cause is alleged to have arisen. It seems to us impossible to say that the facts thus alleged did not indicate, if true, a serious neglect and dereliction of duty, sufficient to justify a removal, if unexplained. And in addition to specifying the causes of the proposed removal, the letter gives a reasonable opportunity for explanation, by assigning a place and time for the relator to appear and make the same. So far as these matters go, the requirements of the statute were certainly satisfied.

At the time and place assigned, the relator appeared in person, accompanied by his counsel, and presented an answer or explanation, which was also in the form of a letter and was as follows :

NEW YORK, *April* 14, 1881.

*To* HUBERT O. THOMPSON, *Commissioner of Public Works :*

SIR. — I am in receipt of your favor of April 11, 1881, containing certain charges against me relating to the conduct of my office

of superintendent of supplies in the department of public works, of the city of New York.

With reference to said charges and any others which you desire to make I wish to say:

*First.* That I shall be ready at any time and place which you may designate, to controvert or satisfactorily explain the same, provided lawful evidence be produced by you of the foundation of said charges against me, and a sufficient opportunity be given me of explaining or disproving them.

*Second.* I deny your right to remove me as superintendent aforesaid, until I shall have been specifically and lawfully informed of each and every cause of the proposed removal, and am allowed an opportunity of making such explanation as I may be advised I am justly entitled to.

*Third.* With reference to the charge contained in your said letter of the eleventh, relating to the "fitting up of the Fifth and Sixty-ninth regiment armories," I desire to say that the charge and supervision of the work to be done and supplies to be furnished in this matter did not come under my bureau or control, and is not, up to this date, under my control or under the charge and supervision of my bureau, and I deny that I am in any sense responsible for the delays or inattention complained of by you in the premises.

*Fourth.* As to the matter of placing an elevator in the brownstone court-house, which came under the charge and supervision of my bureau, I desire to say that when the appropriation therefor was passed to the credit of my bureau, I at once took the necessary steps to carry out the work, but by the direction of the acting commissioner, and in consequence of his acts, and not of mine, in the premises, the carrying out of the work has been delayed up to this time, of all of which you had due notice.

*Fifth.* I deny that my estimates on work to be done for the department have been so flagrantly incorrect that they could not be taken as an indication of the ultimate cost of the respective works or supplies, and I deny that bills or vouchers for said work done and supplies furnished have been unnecessarily and unreasonably delayed in my bureau, and also that in any instance I have refrained from transmitting to you bills for work and supplies or services within seven days after the receipt of them, except in a very few

cases, where a proper and accurate examination and report thereon could not be made within that time, and of which, whenever occuring, I informed you.

*Sixth.* I deny that I have allowed any portion of the work under my supervision to be performed in a dilatory manner, to the great inconvenience of public officers, and I demand that you produce lawful evidence of specific times and places where such acts as you allege occurred.

*Seventh.* I desire to state further that all delays which may have occurred for some time past in the business of my bureau are due to the fact that all the clerical force in my office is, and has been for some time past, very inefficient, and was originally placed there without consultation with me and without my knowledge, and was removed in the same manner, and of this inefficiency you have been, from time to time, notified by me.

*Eighth.* I assert that at all times since I have held this office (now six years), I have performed its duties honestly and with that degree of intelligence which the position requires, and I further assert that any delays in business, unskillful work, or any other matters in my bureau which may have been complained of, were not due to my conduct but to others, over whom you did not permit me to have sufficient control to regulate the speed and quality of the work performed.

*Ninth.* I respectfully urge my right and request:

(1.) That each and every charge which you desire to make be reduced to writing and be definitely and specifically framed, and that lawful evidence be produced to sustain each of them.

(2.) That I be allowed to answer each charge in writing, and to produce lawful testimony to controvert or explain the same; and

(3.) That I may be represented by counsel in the hearing and conduct of any investigation which may be made by you in the premises.                   Yours very respectfully,

   (Signed)     THOMAS KEECH.

A colloquy then took place between the commissioner and the counsel, which is set forth at length in the return, the substance of which is that the relator reiterated his claim to the right to take testimony as to any defense or explanation which he might have to make

to either or any of the charges, and insisted that before the commissioner could remove him, he (the commissioner) must produce oral or other testimony to substantiate any charge which he had made or desired to make; and that the answer in writing was a sufficient explanation of the charges in the commissioner's letter, so far as they were specific and definite enough to be answered. The commissioner declared his readiness to hear anything that the relator wished to say in addition to his written answer, but refused to postpone the hearing for that purpose, and insisted that his letter of the eleventh of April was a sufficiently definite and specific statement of the charges. The upshot of the colloquy appears to have been that the relator, by his counsel, demanded a trial or hearing on which the commissioner should produce proof of the alleged causes or charges, and that the relator should be allowed to produce evidence to contradict, explain or defeat them.

We are of opinion that, under the provisions of the act above quoted, where causes are assigned which, if unexplained, would be sufficient to justify the removal, and an opportunity of explanation is given, the law has devolved upon the commissioner alone to determine whether or not the explanation is satisfactory. In this case the commissioner, on the presentation of the written answer of the relator, after hearing whatever was orally alleged or claimed, adjudged that the charges of his letter were not satisfactorily explained. The answer consisted in part of denials of portions of the charges, and in part of such explanations as the relator was able or saw fit to make. No further charges than those contained in his letter were made by the commissioner, and he declined to make any others than those thus named, and refused to make them more specific, but offered, at that time and place, to receive any additional or further explanation that the relator desired to make.

This was, it seems to us, so far as respects the charges, all that the law requires at the hands of the commissioner; and the whole case turns upon the question of the right of the relator to demand a trial or hearing by the production of oral or other evidence on the part of the commissioner and of counter evidence on the part of the relator. No such trial is contemplated by the act and no such trial has ever been had or been required by the courts in any of the several cases that have arisen under this provision.

The language of this provision is different from that used by the act in providing for the removal by the mayor of the heads of departments. By section 25 of the act it is provided that the mayor may remove the head of any department "for cause, and after opportunity to be heard." In *The People ex rel. The Mayor* v. *Nichols* (79 N. Y., 582), it was held by the Court of Appeals that, under this provision, the heads of departments are entitled to a trial by and before the mayor, in which that officer is to produce proof of such charges, and the answering officers may appear by counsel and produce witnesses to disprove the same. The decision turns upon the force to be given the words "after opportunity to be heard." But no such effect or force belongs to the words used in the twenty-eighth section, which are "allowed an opportunity for explanation." Neither the spirit nor the letter of this provision requires any mode or form of trial beyond that expressly indicated, to wit, the presentation of charges sufficient in themselves, if true, to justify the removal; a notice to the officer of such charges, and an allowance to him of an opportunity for explanation. When the explanation is presented to such charges, either oral or in writing, the statute makes the head of the department the exclusive judge, whether it is sufficient or satisfactory. Any other course would launch the heads of departments of the city into farcical mockeries of trials, shocking to both the moral and common sense of the community, in which those officers, without any power to enforce the attendance of witnesses, and without any authority to punish for contempt, or to preserve order in their *pseudo* courts, might be helplessly subjected to the delays and the insolence and abuse which have marked similar trials.

It is of no consequence in this case whether or not, in our opinion, the explanation of the relator might well have been accepted as satisfactory by the commissioner. The rule on that point is well expressed by CHURCH, Ch. J., in the case of *The People ex rel. Folk* v. *The Board of Police* (69 N. Y., 409), in which the chief of police was removed for alleged incapacity. After commenting upon the fact that nothing culpable or criminal, either in omission or commission, was clearly established, and that it would be difficult for the learned judge to find from the evidence a want of capacity, he proceeds to say :

"Yet there are facts disclosed from which an inference of want of proper capacity might be drawn by those possessing superior knowledge upon the subject, *and this necessarily refers it to the judgment and skill of the members of the board, who are presumed to be competent, and who are responsible in some degree for the most efficient working of the force.*

"It is not needful that we should concur on the merits in their finding, in order to affirm their judgment."

There is no doubt, we think, that the statute in this case committed to the commissioner a discretionary power to act upon his own knowledge of the facts, so far as they were denied by the relator, and to judge of the reasonableness and sufficiency of the excuse he presented, so far as the facts were not denied; and that discretion is not the subject of review by the courts.

This view of the law leaves to the power of removal a degree of efficiency which would be wholly lost by the construction claimed by the relator. It is eminently important to the public that the tone and vigor infused into the bureaux of the several departments should be maintained by the decision of the courts, and this cannot be done by our interference with the discretion of the head of a department which he has exercised in conformity to the directions of the statute and for such causes as the statute requires.

The writ should be dismissed, but, under the peculiar circumstances of this case, we think without costs.

Daniels, J., concurred; Brady, J., concurred in the result.

Writ dismissed, without costs.